UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

BRANDI H.,

               Plaintiff,

    v.

COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION,

               Defendant.

Case No. 6:24-cv-02101-YY

OPINION AND ORDER

YOU, Magistrate Judge.

Plaintiff Brandi H.[1] seeks judicial review of the Commissioner's final decision denying social security disability benefits. Plaintiff asserts the Administrative Law Judge erred in discounting her subjective symptom testimony and the opinion of her treating physician's assistant. The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). With that standard of review applied, the Commissioner's decision is AFFIRMED.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the nongovernmental party in this case.

I.      **Subjective Symptom Testimony**

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted). A general assertion that claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The proffered reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

Effective March 28, 2016, the Commissioner superseded Social Security Ruling ("SSR") 96-7p, governing the assessment of a claimant's "credibility," and replaced it with SSR 16-3p. *See* SSR 16-3p, available at 2016 WL 1119029. SSR 16-3p eliminates the reference to "credibility," clarifies "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *1–2. The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information

Page 2 – OPINION AND ORDER

provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at \*4.

Plaintiff's alleged onset date is January 11, 2019, and her date last insured is December 31, 2023. The ALJ found that plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 698. The ALJ provided a number of reasons for discounting plaintiff's subjective symptom testimony.

The ALJ found that plaintiff's "lack of adherence to or seeking of treatment raises questions as to the severity of symptoms alleged." Tr. 698. The ALJ observed that "[w]hile there are consistent subjective reports in the records regarding the claimant's mental symptomology, treatment has been sporadic." *Id.* The ALJ noted that plaintiff "went to Shangri-La starting in early 2020 after an assessment in January of 2020" but "chose to terminate services in mid-2020 due to feeling overwhelmed with other medical appointments," and her "adherence to recommended treatment during this short treating relationship was minimal, as was adherence to contemporaneous recommendations from her primary care provider." *Id.* (citing, e.g., Ex. 1F/10, 14, 65). The ALJ observed that "[t]here are later therapy notes at exhibit 2F from 2020 through early 2021, but they pertain primarily to situational symptoms from the claimant's divorce." *Id.* (citing, e.g., Ex. 2F/1).

The ALJ's conclusions are supported by the record. Plaintiff had an intake appointment at Shangri-La Corporation in December 2019. Tr. 481. She was living with her husband and child, and was seeking a psychological assessment, mental health counseling services, and medication management to manage her anxiety. Tr. 485. She reported a long history of taking

antidepressants and benzodiazepines, but claimed she did not respond well to antidepressants and these medications made her feel worse. Tr. 344; Tr. 458 (reported she started seeing counselors in 7th grade, thought she had tried 20 different antidepressants, and began taking Xanax when 16 years old). Treatment notes indicate that plaintiff's "anxiety and worry is interfering w/ her trying a medication for her mental health." Tr. 336; Tr. 349 (plaintiff "has very high anxiety over starting new mental health medications"), 380 (plaintiff reported not starting medication "because of the listed side effects" and did not want to take anything that would cause her to gain weight), 345 (indicating a prescriber wanted her to take lamotrigine, but she did not begin this medication because "she was afraid of SJ Syndrome").

Plaintiff's initial appointment at Shangri-La was on January 8, 2020, at which time plaintiff indicated "I'm here for my kid," she wanted to "have her mental health under control, managed," she would engage in weekly mental health counseling, and "[t]hrough consistent, regular engagement with counseling and medication adherence [she] aims to improve level of function in order to secure and maintain gainful employment, every day dog walking, eating healthier at least 2 days a week." Tr. 450. Plaintiff attended individual therapy sessions on January 15, 22, 29, March 11, 25, April 1, 15, and 22, 2020. However, plaintiff failed to attend appointments and return phone calls, and Shangri-La discontinued services in July 2020. At the time, plaintiff told Shangri-La that she did not "want to engage with mental health or therapy at this time [due to] how overwhelmed she is [with] her other appointments." Tr. 349.

On December 11, 2020, plaintiff sought therapy with Country Counseling to process her separation from her husband and impending divorce, to create healthy boundaries with her husband, and to learn to move on from him. Tr. 487. Treatment notes indicate that the sessions

Page 4 – OPINION AND ORDER

mostly focused on processing the divorce and managing plaintiff's feelings toward her husband, but plaintiff also discussed her bipolar behavior. The last record of plaintiff's counseling at Country Counseling is dated February 24, 2021.

Plaintiff's treating medical provider, Lauren Bell, P.A., noted on September 24, 2021, that plaintiff was taking Wellbutrin and seeing a counselor named Jessica at Country Counseling approximately once a week. Tr. 610. Plaintiff also indicated that she had undergone gene testing at PeaceHealth and brought the results to a previous visit to help with medication therapy. Tr. 610. In February 2022, Bell noted that plaintiff was still taking Wellbutrin but was unable to get in to see a counselor and psychiatrist, and asked for a referral. Tr. 680. Plaintiff did not feel that Wellbutrin controlled all of her mood swings and did not want to take medication that caused her to gain weight. Tr. 680.

At her July 2022 hearing, plaintiff admitted that she had refused medications while being treated at Shangri La and was not in treatment for mental health at the time. Tr. 55. In August 2022, plaintiff saw Bell to obtain an emotional support animal letter. Tr. 876. She was still taking Wellbutrin and reported that "her mood was stable considering everything going on," including that she had to move out of her house and did not have a job. *Id.* She reported that she could not see a psychiatrist or counselor and needed a new referral. *Id.*

In September 2022, plaintiff sought treatment at Oregon Psychiatric Partners for worsening depression and anxiety with frequent episodes of crying, anger, and agitation after her mother sold the house she had been living in and she became homeless and was living in her car. Tr. 873. Plaintiff also reported that her husband, with whom she was legally separated, had taken custody of their 15-year-old daughter and she was not allowed to see her child, which intensified

Page 5 – OPINION AND ORDER

her anxiety. Her anxiety and worrying had "gotten out of hand," and she was nearly panicking with fear that husband was not properly caring for daughter. She was taking Wellbutrin daily and met the criteria for acute severe depression due to current life circumstances, along with a history of depression and generalized anxiety going back to her teenage years. Lexapro was prescribed in addition to Wellbutrin, as well as Lorazepam for breakthrough anxiety. Plaintiff was instructed to be compliant with medications and follow up in a week. Plaintiff was seen again in November 2022 for medication management, at which time she reported the Lexapro was "working" to decrease her depression and she was in "better spirits" with "some improved energy and improved sleep." Tr. 894-95. Because she still experienced some symptoms, her dosage of Lexapro was increased. Plaintiff was instructed to follow up in four weeks. Tr. 896. At her 2024 hearing, plaintiff testified that, after her dosage of Lexapro was increased, she "started to really notice a differen[ce] in my mood, in my ability to want to get up and do, go out and try to interact with the world," and she went to work for Belknap as a housekeeper. Tr. 720-21.

Thus, as the ALJ concluded, plaintiff failed to continue with mental health treatment at Shangri-La, even though weekly mental health counseling sessions were recommended and "consistent, regular engagement with counseling" was designed to improve her level of functioning so that she could secure and maintain gainful employment. Tr. 450. Thereafter, as the ALJ noted, plaintiff went back to mental health counseling when situational stressors arising from her divorce and, thereafter, her eviction arose. This was a reasonable interpretation of the record. If the evidence in the record is subject to more than one rational interpretation and the ALJ's interpretation was reasonable, this court must uphold the ALJ's conclusion. *Burch v.*

Page 6 – OPINION AND ORDER

*Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

The ALJ acknowledged that plaintiff's "failure to comply could in part be due to symptoms of anxiety, concern over side effects of medications, or lack of response from prior medications that have been tried." Tr. 698. Plaintiff argues that this reasoning is confusing and undermines the ALJ's decision. But notably, the ALJ wrote that plaintiff's "failure to comply could *in part* be due to" these other factors; the ALJ otherwise observed that plaintiff "chose to terminate services in mid-2020 due to feeling overwhelmed with other medical appointments," which the record shows was the reason she gave for discontinuing treatment at Shangri-La at the time. Tr. 349, 698. The ALJ also observed that plaintiff's "objective findings have been largely normal" and she "has engaged in a level of activity inconsistent with the severity of symptoms alleged." Tr. 698 (citing Ex. 1F/7, 64, 88, 2F/6, 8, 10, 10F, 11F/3, 12F/12). Specifically, the ALJ observed that plaintiff "has been capable of cooking simple meals, washing dishes, cleaning, doing yardwork, mowing, and driving, consistent with an ability to perform at least simple and routine tasks during the period at issue." Tr. 698 (citing Ex. 6F); *see also* 669 ("Per her self-report to the consultative examiner seen at exhibit 6F, she has also remained capable of a wide variety of activities, including outdoor chores, driving, and cooking."); Tr. 603 (indicating plaintiff bathed and dressed herself, cooked and shopped for groceries, drove every day, did yardwork and mowing, cleaned the house and did laundry, and cared for her daughter daily). *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (holding an ALJ may invoke activities of daily living in the context of discrediting subjective symptom testimony to illustrate a contradiction in previous testimony).

Page 7 – OPINION AND ORDER

The ALJ also discounted plaintiff's symptom testimony because she exhibited improvement with medication. Tr. 698. The ALJ cited to August 2022 treatment notes indicating that plaintiff was taking Wellbutrin and reported that "her mood was stable considering everything going on." Tr. 698 (citing 11F/1). The ALJ also cited records from September 2022 when plaintiff started Lexapro in combination with Wellbutrin and reported feeling better by late 2022. Tr. 698 (citing Exs. 10F, 12F/4, 8). In fact, at her 2024 hearing, plaintiff testified that, after her dosage of Lexapro was increased, she "started to really notice a differen[ce] in my mood, in my ability to want to get up and do, go out and try to interact with the world," and she went to work for Belknap as a housekeeper. Tr. 720-21; *see* Def. Br. 8 ("Symptoms may wax and wane during the progression of a mental disorder," but they "may also subside during treatment," and "[t]hat is what happened here.") (quoting *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017).

Finally, the ALJ discounted plaintiff's symptom testimony as "inconsistent because while she alleges being unable to work due to her mental health, including multiple days a month where she would essentially spend all of her day in bed, there is little treatment for her mental health reflected in the relevant period, and the most recent counseling-focused notes available were focused on the claimant's divorce, seen at exhibit 2F, with surprisingly little discussion of debilitating, chronic mental health symptoms." Tr. 669. Indeed, plaintiff's Country Counseling treatment records focused mainly on plaintiff's divorce and how she could better manage her feelings toward her husband.

In sum, the ALJ provided at least one clear and convincing reason, supported by substantial evidence, to discount plaintiff's subjective symptom testimony. Therefore, the ALJ did not err in this regard.

## II.  Medical Opinion Evidence

### A.  Standard Regarding Evaluation of Medical Opinion Evidence

When evaluating medical opinion evidence for claims filed on or after March 27, 2017, ALJs must apply 20 C.F.R. § 404.1520c for Title II claims and 20 C.F.R. § 416.920c for Title XVI claims. *Revisions to Rules Regarding the Evaluation of Medical Evidence* (*Revisions to Rules*), 82 Fed. Reg. 5844, *available at* 2017 WL 168819 (Jan. 18, 2017). Under these regulations, ALJs no longer "weigh" medical opinions, but rather determine which are most "persuasive." 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b). To that end, controlling weight is no longer given to any medical opinion. *Revisions to Rules*, 82 Fed. Reg. at 5867-68; *see also* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner evaluates the persuasiveness of medical opinions based on (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(a), (c)(1)-(5), 416.920c(a), (c)(1)-(5).

The factors of "supportability" and "consistency" are considered to be "the most important factors" in the evaluation process. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant . . . objective medical evidence." *Woods v. Kijakazi*, 32 F.4th 785, 791–

92 (9th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)(1)). Consistency means the extent to which a medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim." *Id.* (citing 20 C.F.R § 404.1520c(c)(2)).

An ALJ must articulate how persuasive the ALJ finds the medical opinions and explain how the ALJ considered the supportability and consistency factors. 20 C.F.R. §§ 404.1520c(a), (b), 416.920c(a), (b); *see Tyrone W. v. Saul*, No. 3:19-CV-01719-IM, 2020 WL 6363839, at *7 (D. Or. Oct. 28, 2020). "The ALJ may but is not required to explain how other factors were considered, as appropriate, including relationship with the claimant (length, purpose, and extent of treatment relationship; frequency of examination); whether there is an examining relationship; specialization; and other factors, such as familiarity with other evidence in the claim file or understanding of the Social Security disability program's policies and evidentiary requirements." *Linda F. v. Comm'r Soc. Sec. Admin.*, No. C20-5076-MAT, 2020 WL 6544628, at *2 (W.D. Wash. Nov. 6, 2020). However, ALJs are required to explain "how they considered other secondary medical factors [if] they find that two or more medical opinions about the same issue are equally supported and consistent with the record but not identical." *Tyrone W.*, 2020 WL 6363839, at *6 (citing 20 C.F.R. §§ 404.1520c(b)(2) and 404.1520c(b)(3)).

Furthermore, the court must continue to consider whether the ALJ's decision is supported by substantial evidence. *See Revisions to Rules*, 82 Fed. Reg. at 5852 ("Courts reviewing claims under our current rules have focused more on whether we sufficiently articulated the weight we gave treating source opinions, rather than on whether substantial evidence supports our final decision."); *see also* 42 U.S.C. § 405(g).

**B.      Lauren Bell, P.A.**

Lauren Bell, plaintiff's treating physician's assistant, completed a treating source statement on February 28, 2022. Tr. 671. The ALJ found that Bell's opinion was not persuasive because, "[w]hile supported to some degree by a treating relationship," Bell did not "adequately support limitations offered, for example, she fails to offer any explanation as to why the claimant would need to elevate her legs periodically throughout the day." Tr. 701. The ALJ also found that the level of limitation suggested from the claimant's mental health symptoms and residual stroke symptoms that would require lying down during the day, missing more than four days of work per month, or being off-task more than 25% of a workday are inconsistent with every other opinion discussed in this section, examination results at exhibits 6F, 8F, and 10F-12F that are almost entirely normal with regard to the claimant's psychiatric and physical functioning, and the claimant's overall minimal treatment that has often been related to situational stressors." *Id.*

The ALJ did not err in discounting Bell's opinion because it conflicted with evidence that plaintiff engaged in minimal treatment and when she did engage in treatment, it coincided with situational stressors. As discussed above, the record supports the ALJ's conclusions in that regard.

Plaintiff argues the ALJ erred in mischaracterizing Bell's opinion to state that plaintiff needed to lie down and elevate her legs during the work day. Plaintiff observes that the questions posed to Bell were actually whether plaintiff would have to "lie down or rest periodically during the day" and whether plaintiff would "periodically need to elevate her legs in a physical 8-hour period." Tr. 672, 675. Bell did not explain why plaintiff would need to periodically elevate her legs, but she was not specifically asked to elaborate on that opinion. Tr. 675. Bell did explain that

Page 11 – OPINION AND ORDER

plaintiff would have to lie down or rest periodically during the day because of "daytime fatigue due to depression." Tr. 672. Regardless, the ALJ properly discounted Bell's opinion because it conflicted with evidence of minimal treatment and normal examination results regarding plaintiff's physical functioning. Tr. 701. The ALJ cited to physical examination findings showing plaintiff was able to transfer from chair to examination table, sit comfortably, remove shoes without difficulty, walk to the examination room without difficulty, was coordinated with normal gait, exhibited normal straight leg raising, and exhibited 5/5 strength in lower extremities. *Id.* (citing Tr. 602-07). Because the ALJ explained how Bell's opinion was unsupported and inconsistent with the record, and the ALJ's decision is supported by substantial evidence, the ALJ did not err in finding Bell's opinion was not persuasive.

## CONCLUSION

The Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

DATED July 31, 2026.

/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge

Page 12 – OPINION AND ORDER